IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JESSICA KILLINGHAM, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 17-cv-0187-MJR-DGW |
| | ) |
| ILLINOIS CENTRAL RAILROAD COMPANY, | ) |
| | ) |
| Defendant. | ) |

MEMORANDUM AND ORDER

**Chief Judge Reagan:**

A. **Introduction**

Jessica Killingham worked as a trackperson for Illinois Central Railroad. On October 7, 2016, while operating a tie extractor in the course of her normal job duties, Jessica was rear-ended by another railroad employee operating a tie extractor – Theodore Brister. Jessica completed her day's work but then began experiencing dizziness and pain. After seeking treatment at a local hospital emergency room, consulting with her primary care physician, and seeing an orthopedic specialist, Jessica was diagnosed with a torn rotator cuff in her left shoulder. She underwent medical treatment and extensive therapy, eventually returning to work on April 19, 2017.

Jessica (Plaintiff) filed suit in this United States District Court, seeking to recover damages for the personal injuries she sustained in the collision. The complaint names her employer, Illinois Central Railroad (ICR), as the sole defendant and asserts that her injuries were caused by the negligence of ICR or its agents/employees acting within the

scope of their employment and authority. Plaintiff seeks to recover under the Federal Employers' Liability Act (FELA), 45 U.S.C. 51, et seq.

Specifically, the complaint alleges that ICR was negligent in nine ways:

(a) failing to furnish Plaintiff a reasonably safe place to work;
(b) failing to furnish Plaintiff reasonably safe equipment to perform her assigned duties;
(c) failing to furnish Plaintiff necessary personal protective equipment;
(d) failing to furnish Plaintiff necessary supervision in her assigned duties;
(e) failing to properly supervise Theodore Brister in operating the tie extractor;
(f) failing to properly train employees in the operation of tie extractors;
(g) failing to warn Plaintiff of hazardous conditions of the equipment;
(h) allowing unsafe practices to become standard practice; and
(i) allowing Theodore Brister to behave inattentive while operating the tie extractor.

ICR answered the complaint, a Scheduling Order was entered (with a March 8, 2018 discovery cutoff), and trial was set for July 16, 2018. Now before the Court is a motion for partial summary judgment filed by ICR on July 27, 2017 (Doc. 25), to which Plaintiff responded on September 5, 2017 (Doc. 31), and ICR replied on September 13, 2017 (Doc. 34).

ICR seeks summary judgment as to certain claims, allegations, and elements of damages sought by Plaintiff. These include any: (1) allegations of injury to Plaintiff's right shoulder, (2) claim for psychological injuries or mental anguish, (3) claim that ICR failed to furnish Plaintiff with proper personal protective equipment, (4) claim that ICR failed to properly train its employees to operate tie extractors, and (5) request to recover for lost wages or earning capacity outside of October 8, 2016 through April 18, 2017. As stated below, the Court grants in part and denies in part ICR's motion.

B. **Applicable Legal Standards**

SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56 governs motions for summary judgment. Summary judgment is appropriate where the admissible evidence shows that there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law. *Taylor-Novotny v. Health Alliance Medical Plans, Inc.*, **772 F.3d 478, 488 (7th Cir. 2014)**. *Accord Archdiocese of Milwaukee v. Doe*, **743 F.3d 1101, 1105 (7th Cir. 2014)**, *citing* FED. R. CIV. P. 56. A "material fact" is a fact that affects the outcome of the lawsuit, i.e., it is outcome-determinative under the applicable substantive law. *Taylor-Novotny*, **772 F.3d at 488;** *Hanover Ins. Co. v. Northern Bldg. Co.*, **751 F.3d 788, 791 (7th Cir.),** *cert. denied,* **135 S. Ct. 280 (2014).**

A genuine issue of material fact remains (and summary judgment should be denied), "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Miller v. Gonzalez*, **761 F.3d 822, 827 (7th Cir. 2014),** *quoting Anderson v. Liberty Lobby, Inc.*, **477 U.S. 242, 248 (1986).** However, if the factual record taken as a whole could not lead a reasonable jury to find for the non-moving party, there is nothing for the jury to do, and summary judgment is properly granted. *Bunn v. Khoury Enterprises, Inc.*, **753 F.3d 676, 682 (7th Cir. 2014),** *citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, **475 U.S. 574, 587 (1986).**

In assessing whether a genuine issue of material fact exists, this Court views the record in the light most favorable to the non-moving party. *Bunn,* **753 F.3d at 682.** *See also 520 South Michigan Ave. Associates, Ltd. v. Unite Here Local 1,* **760 F.3d 708, 718**

**(7th Cir. 2014).** The court examines the competent evidence of record in the light most favorable to the non-moving party, giving the non-movant the benefit of reasonable, favorable inferences and resolving conflicts in the evidence in the non-movant's favor. *Spaine v. Community Contacts, Inc.*, **756 F.3d 542, 544 (7th Cir. 2014).**

Another point bears note here, as ICR seeks summary judgment not only as to certain claims but also as to *parts* of claims and damage elements. Prior to 2010, Federal Rule of Civil Procedure 56 did not authorize the grant of summary judgment as to *part* of a claim or one form of damages (i.e., a request for liquidated damages), because that ruling would not constitute a "judgment" disposing of a whole or entire claim. *See, e.g.*, **10B Charles A. Wright, et al., FEDERAL PRACTICE AND PROCEDURE § 2737 (4th ed. 2016);** *Deimer v. Cincinnati Sub-Zero Products, Inc.*, **990 F.2d 342, 345-46 (7th Cir. 1993).**

As amended, however, Rule 56(a) now provides for a summary judgment motion as to parts of claims or defenses. Although the device should not be used to let a party "pursue a needlessly piecemeal litigation strategy," there is "no doubt that a court may grant … summary judgment as to … one claim, leaving other claims … to be addressed at a later point in the litigation." Indeed, "partial summary judgment can serve a useful brush-clearing function even if it does not obviate the need for a trial, … it may also facilitate the resolution of the remainder of the case through settlement." *Hotel 71 Mezz Lender LLC v. Nat'l Retirement Fund*, **778 F.3d 593, 606 (7th Cir. 2015).**

### OVERVIEW OF FELA

FELA allows employees of common-carrier railroads to recover for work-related injuries caused in whole or part by their railroad employer's negligence. *CSX Transp.*,

*Inc. v. Hensley*, **556 U.S. 838, 839 (2009).** FELA was intended to "provide a broad remedial framework for railroad workers and, in light of that purpose, is to be liberally construed in their favor." *Lisek v. Norfolk & Western Railway Co.*, **30 F.3d 823, 831 (7th Cir. 1994).** *Accord Crompton v. BNSF Ry. Co.*, **745 F.3d 292, 296 (7th Cir. 2014).**

The Court of Appeals for the Seventh Circuit has summarized:

> FELA was enacted in response to the dangers inherent in working for the railroad and the high rate of injuries among railroad employees. See *Consolidated Rail Corp. v. Gottshall,* 512 U.S. 532, 542–43 … (1994). It establishes a standard for employer liability that is more lax than common law negligence standards, and eliminates a number of traditional defenses such as contributory negligence, the fellow-servant rule, and assumption of risk. *Williams v. National R.R. Passenger Corp.,* 161 F.3d 1059, 1061 (7th Cir.1998); *Gottshall,* 512 U.S. at 542–43, 114 S.Ct. 2396. Under FELA, railroads are liable if carrier negligence played any part, even the slightest, in producing the injury. *CSX Transportation, Inc. v. McBride,* ––U.S.––, 131 S.Ct. 2630, 2634 …(2011); *DeBiasio v. Illinois Central R.R.,* 52 F.3d 678, 685 (7th Cir. 1995).

*Lynch v. Northeast Regional Commuter R.R. Corp.*, **700 F.3d 906, 911 (7th Cir. 2012).**

Thus, it is often said that a FELA plaintiff's burden of proof is "significantly lighter" than that of a plaintiff in an ordinary negligence action. *Id., citing Green v. CSX Transp., Inc.*, **414 F.3d 758, 766 (7th Cir. 2005).** FELA plaintiffs more easily survive summary judgment under this relaxed burden of proof, but FELA does not make a railroad the insurer of its employees. In other words, an employee-plaintiff still must proffer *some* evidence of the defendant's negligence to evade summary judgment. *Holbrook v. Norfolk Southern Railway Co.*, **414 F.3d 739, 741-42 (7th Cir. 2005),** *citing Lisek*, **30 F.3d at 832.**

C.  **<u>Analysis</u>**

Relying largely on the testimony Plaintiff gave in her June 20, 2017 deposition in this case, ICR seeks summary judgment "to the extent the Complaint alleges: (1) injuries to Plaintiff's right shoulder, (2) psychological injuries/mental anguish, (3) that Illinois Central failed to furnish Plaintiff with reasonably necessary and proper personal protective equipment, (4) that Illinois Central failed to properly train employees in the operation of tie extractors, and (5) that Plaintiff has lost wages or earning capacity outside of October 8, 2016 through April 18, 2017" (Doc. 25, p. 2).

Plaintiff concedes ICR's argument as to points (1) and (3) above, i.e., the allegations regarding injury to her *right* shoulder and the failure to provide proper personal protective equipment (Doc. 31, p. 1).[1] ICR's motion will be granted as to these two points. Plaintiff contests the other three grounds for summary judgment.

The Court denies at this time ICR's motion as to point (5). The parties are in the early stages of discovery, the discovery cutoff is not until March 8, 2013, only two depositions have been taken (that of Plaintiff and Theodore Brister), no physicians have been deposed, and the existence and extent of any future impact Plaintiff's injuries may have on her earning capacity is not yet clear. Accordingly, the Court finds premature the motion as to Plaintiff's claim for lost *future* wages/earning capacity.[2]

---

[1]  Plaintiff's *left* shoulder was injured in the underlying incident.

[2]  The record indicates that Plaintiff's **past** lost wages would be limited to October 8, 2016 through April 18, 2017. She has returned to work and, as of the date of her deposition, was able to perform her regular job duties without problem or restriction.

The undersigned grants ICR's motion as to point (2). The record before the Court properly considered on summary judgment includes (in addition to some medical records) the sworn deposition testimony of Plaintiff and her co-worker, Theodore Brister. In her deposition, Plaintiff testified to the physical pain and suffering she endured from the injury and subsequent treatment and physical therapy. She did not testify to any psychological injury or mental anguish in her deposition. And she has not identified any such injury in response to summary judgment. Plaintiff's counsel has not pointed to any medical records or other documents to suggest that Plaintiff was ever treated for psychological or mental issues stemming from the accident.

Plaintiff's counsel suggests that perhaps the fact Plaintiff spent money from her savings while injured constitutes a type of stress that the jury could find caused mental anguish. This speculation is not sufficient evidence in the face of summary judgment. At this "put up or shut up" moment created by ICR's summary judgment motion, Plaintiff was required to identify "specific, admissible evidence showing that there is a genuine dispute of material fact for trial" on this issue, i.e., sufficient evidence permitting a jury to find in Plaintiff's favor on this claim. *Grant v. Trustees of Indiana Univ.*, -- F.3d --, 2017 WL 3753996, at *4 (7th Cir. Aug. 31, 2017), *citing Harney v. Speedway SuperAmerica, LLC*, 526 F.3d 1099, 1104 (7th Cir. 2008), and *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003), and *Packer v. Tr. of Indiana Univ. School of Medicine*, 800 F.3d 843, 847 (7th Cir. 2015). As the undersigned reviews the competent record evidence, Plaintiff gets the benefit of reasonable inferences. She is not entitled to the benefit of inferences "supported by only speculation or conjecture."

*Grant,* 2017 WL 3753996, at *3, *quoting Nichols v. Michigan City Plant Planning Dep't,* 755 F.3d 594, 599 (7th Cir. 2014). *Accord Boss v. Castro,* 816 F.3d 910, 916 (7th Cir. 2016). The record is devoid of evidence that Plaintiff suffered psychological injury or mental anguish as result of the incident. ICR is entitled to summary judgment on this issue.

The allegation of negligent training — point (4) of ICR's motion—presents a closer call. The essence of ICR's argument on this topic is that Plaintiff's own deposition testimony dooms her claim that ICR negligently trained Theodore Brister. The complaint broadly alleges that ICR "failed to properly train employees in operation of tie extractors" (Doc. 1, p. 3, ¶ 12(f)).

In her deposition, Plaintiff acknowledged that Theodore Brister was trained and experienced in operation of a tie extractor or "Tripp" machine (Doc. 26-,1; pp. 15-16):

> Q. Do you consider Mr. Brister a good, safe, machine operator?
> A. Yes.
> Q. And was he trained and experienced on a Tripp machine?
> A. Yes.
> Q. He knew what he was doing?
> A. Yes.
> Q. Had you ever had a prior problem working with Mr. Brister before this happened?
> A. No.
> Q. And [you] sure weren't expecting one that day; were you?
> A. No.

Plaintiff then explained that although she spent more time operating a spike-puller and was newer to operation of the tie extractor than most, she felt comfortable operating the tie extractor the day of the accident, she knew what she was doing, she had been working at an unrushed pace, and at the time of the collision she was simply sitting still after traveling from one work location to another (Doc. 26-1, p. 18). More

specifically, Plaintiff opined that she had been sufficiently trained to operate a tie extractor (*id*, pp. 24-25):

> Q. Okay. You knew your job, correct?
> A. Yes.
> Q. You had been properly trained in your opinion?
> A. Yes.
> Q. Mr. Brister knew his job?
> A. Yes.
> Q. He had been properly trained –
> A. Yes.

Brister also testified (Doc. 32-2, pp. 5-6) that he believed himself to be a safe, experienced machine operator:

> Q. Sir, the Tripp machines that you and Jessica Killingham were operating that day, how long had you been operating that type of machine?
> A. A little over six years.
> Q. Do you consider yourself a good, safe, experienced machine operator?
> A. Yes.
> Q. Know what you're doing?
> A. Yes.
> Q. Well trained?
> A. Yes.

ICR maintains that this testimony slams the door on a negligent training claim. ICR's argument on this point is short and largely undeveloped. Plaintiff counters that other witnesses may have different testimony on this point. In its *reply* brief, ICR cites Eleventh Circuit and Alabama district court cases stating that a plaintiff may not escape summary judgment by relying on witnesses to discredit the plaintiff's own "admissions that defeat her case" (Doc. 34, p. 4).

The latter is true as a general proposition but does not fully answer the question before this Court. An employee's *perception* or *opinion* that he was adequately trained (like Brister's testimony here) does not necessarily mean that the employer (like ICR) fully discharged its duty to properly train its employees. Yes, Plaintiff opined fleetingly that Brister was properly trained. But it is unclear the depth of Plaintiff's knowledge of Brister's training or the basis for her opinion about its sufficiency. Plus, other facts in the record, such as Brister's candid testimony that he was not paying attention when he rear-ended Plaintiff (Doc. 32-2, p. 4), support a reasonable inference that Brister was *not* properly trained (e.g., he may not have been trained in how to maintain the proper speed or a safe distance between his vehicle and the track machine in front of him). As mentioned above, this case is in the early stages of discovery, and other key witnesses have yet to be deposed – witnesses such as Brister's supervisor or others at ICR who could shed light on the training ICR employees (including Brister) did or did not receive.

A FELA employee is entitled to present his case to a jury "if 'the proofs justify with reason the conclusion that employer negligence played *any part, even the slightest,* in producing the injury.'" **Lynch, 700 F.3d at 912, quoting Rogers v. Missouri Pacific R.R. Co., 352 U.S. 500, 506 (1957).** So the relevant inquiry here is whether the competent record evidence raises a genuine issue of fact that ICR's negligent training of employees was a cause, even in the slightest, of Plaintiff's injury. Viewing the admissible evidence and reasonable inferences in Plaintiff's favor, the undersigned answer that question yes and finds there is a genuine issue of fact as to whether ICR's

negligent training was a cause of Plaintiff's injury.[3] Summary judgment will be denied on this point.

D. **Conclusion**

The Court **GRANTS IN PART and DENIES IN PART** the July 27, 2017 summary judgment motion filed by ICR (Doc. 25). The motion is *granted* as to points (1), (2), and (3) of the motion – targeting Plaintiff's allegations of injury to her right shoulder, of psychological injuries or mental anguish, and that ICR failed to provide appropriate personal protective equipment. The motion is *denied* as to points (4) and (5) of the motion – directed at Plaintiff's allegation that ICR failed to properly train its employees and her claim for lost future wages or earning capacity (after April 18, 2017).

Another summary judgment motion (Doc. 32, Plaintiff's motion for partial summary judgment) has been filed herein but is not yet ripe for resolution – the response is due October 16, 2017, and the reply is due October 30, 2017.

IT IS SO ORDERED.

DATED September 20, 2017.

*s/ Michael J. Reagan*
Michael J. Reagan
United States District Judge

---

[3] In reaching this decision, the Court does *not* rely on evidence that Brister was charged with and admitted rule violations in connection with the accident – specifically that he was disciplined (given a 10-day suspension from work) for failure to be alert and attentive. *See Brister Depo. Testimony*, Doc. 31-2, p. 5. ICR contends this is evidence in the nature of a subsequent remedial measure which cannot be used to prove negligence under Federal Rule of Evidence 407. *See* Doc. 34, fn. 3.